ROBERTS, J.,
for the Court.
¶ 1. A jury sitting before the Oktibbeha County Circuit Court found Floyd Robinson guilty of murdering his on-again, off-again girlfriend, Bridgette Moore. The circuit court sentenced Robinson to life imprisonment in the custody of the Mississippi Department of Corrections. Aggrieved, Robinson appeals. Finding no error, we affirm.
*526 FACTS AND PROCEDURAL HISTORY
¶ 2. On November 30, 2005, a woman went to the Oktibbeha County Jail and asked Deputy Sheriff Shannon Williams to go to a house and check on her friend, Bridgette. Deputy Williams complied and went to Bridgette’s house in Starkville, Mississippi, where he found Bridgette’s lifeless body. An autopsy later confirmed that Bridgette had died due to a single gunshot that traveled through her spleen, her stomach, and lodged in her heart.
¶3. Officers from the Starkville Police Department searched the crime scene and found a brown paper bag, a black comb, and an unfired .25 caliber shell casing. Officers also found blood on a cinder block that supported the steps to Bridgette’s house, blood on the third step to the house, and two broken acrylic fingernails. Authorities focused their investigation on Bridgette’s boyfriend, Robinson.
¶ 4. Robinson was arrested at his home. During a subsequent interrogation, Robinson signed a statement indicating that he and Bridgette struggled over a pistol and that the pistol discharged during the struggle. That is, Robinson claimed that Bridgette’s death was an accident that happened during an altercation. Dr. Steven Hayne testified that the fatal gunshot entered Bridgette’s body through her left side, traveled from left to right and upward at a thirty to thirty-five degree angle. The bullet went between two of Bridgette’s ribs, through Bridgette’s spleen, stomach, liver, heart, and lung. The bullet came to rest in Bridgette’s right chest cavity. According to Dr. Hayne, the bullet was fired from approximately twelve to eighteen inches from Bridgette’s body. Robinson testified that after Bridgette was shot, she sat on the steps to her front door, and they had a conversation. However, Dr. Hayne testified that Bridgette would have lost consciousness in three to fifteen seconds after she was shot. Additional facts and procedural history will be discussed in greater detail as necessary. Suffice it to say, Robinson was indicted, tried, and convicted of murder. After an unsuccessful post-trial motion for a judgment notwithstanding the verdict, Robinson appeals.
ANALYSIS
I. ROBINSON’S FIFTH AMENDMENT RIGHTS
¶ 5. Robinson was interrogated after he was arrested. That interrogation was preserved in the form of a DVD. At trial, the circuit court allowed the prosecution to play the DVD recording of that interrogation before the jury. Robinson takes the position that the circuit court erred because he invoked his right to have an attorney present, but the interrogating officers ignored his request. Because Robinson did not raise this issue at trial, he is forced to argue that the circuit court’s decision constituted plain error.
¶ 6. “As a general rule, constitutional questions not asserted at the trial level are deemed waived.” Williams v. State, 971 So.2d 581, 590(¶ 29) (Miss.2007) (holding that an appellant’s claim that he was questioned before he was informed of his Miranda rights was procedurally barred when raised for the first time on appeal). Accordingly, this issue is procedurally barred.
II. PRIOR-BAD-ACTS EVIDENCE
¶ 7. In his second issue, Robinson again takes exception to the prosecution’s use of the DVD recording of his confession. Unlike his first issue, Robinson is not required to travel under a plain-error theory. When the prosecution attempted to introduce the DVD recording of Robinson’s interrogation into evidence, Robin *527 son’s attorney objected and argued that it was inadmissible because during the interrogation, a law enforcement officer confronted Robinson with a report, dated sometime after an alleged incident on May 24, 2003, from a law enforcement officer identified only as “Officer Williams.” Officer Williams’s report indicated that Marilyn McKinney gave a statement and reported that Robinson threatened to kill her and that he put a gun to her head, pushed her, kicked her, and pulled out her hair. Robinson’s attorney reasoned that the jury should not be permitted to hear that portion of the interrogation because it tended to persuade the jury that, having been violent two years earlier with one romantic interest, Marilyn, Robinson was more likely to have behaved similarly with Bridgette, another romantic interest and the victim in this case.
¶ 8. The prosecution argued that the DVD recording was admissible because it contained evidence that Robinson and Bridgette had an increasingly violent relationship that culminated in her death. The circuit court overruled Robinson’s objection. According to the circuit court, “[t]he completeness of the issue that I have, that’s what they’re doing is interrogating concerning a homicide. That is different than eliciting evidence of a prior crime or criminal act. The objection and motion to suppress on that basis is overruled.” Robinson appeals and claims the circuit court committed reversible error.
¶ 9. As we review this issue, we are mindful that the circuit court judge “enjoys a considerable amount of discretion as to the relevancy and admissibility of evidence.” Shearer v. State, 423 So.2d 824, 826 (Miss.1982). We will not reverse the circuit court judge unless he abused his discretion and caused Robinson to experience prejudice. Id.
¶ 10. Pursuant to Mississippi Rule of Evidence 404(b):
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
The Mississippi Supreme Court has held that Rule 404(b) “exists to prevent the State from suggesting that, since a defendant has committed other crimes previously, the probability is greater that he is also guilty of the offense for which he is presently charged.” Jasper v. State, 759 So.2d 1136, 1141(¶ 23) (Miss.1999). “[E]ven when other-crimes evidence is admissible under M.R.E. 404(b), it must pass through the ‘ultimate filter’ of M.R.E. 403.” Id. at (¶ 24). Additionally, “when other-crimes evidence is admitted under M.R.E. 404(b) a limiting instruction is required[.]” Id.
¶ 11. In the event that “404(b) evidence is offered and there was an objection which is overruled, the objection shall be deemed an invocation of the right to [an] M.R.E. 403 balancing analysis and a limiting instruction.” Id. “The court shall conduct [a Rule 403 balancing test] and, if the evidence passes that hurdle, give a limiting instruction unless the party objecting to the evidence objects to giving the limiting instruction.” Id.
¶ 12. On the DVD admitted into evidence and played for multiple hours before the jury, the interrogating officer read Officer Williams’s report to Robinson and that report stated as follows:
On the above date at approximately 20:52 hours, I, Officer Williams, took a report from Ms. McKinney concerning her boyfriend. It says ... Floyd Robinson ... constantly keeps threatening *528 her about killing her. He’s always talking to her [about] ... taking her to the middle of nowhere, putting a gun to her head and throat and telling her what he would do to her. On [May 24, 2003] ... he took her to his house and started washing dishes and when she told him she was going home, he started going ballistic and started to push, kick, and pull out her hair. He pulled a gun on her then[,] and once he settled down, he just told her to leave. She left and went home and then called the police.
After the interrogating officer read the report to Robinson, the interrogating officer commented, “[m]y goodness. You got two women saying they felt like you were going to kill them at one point in time— two separate times.”
¶ 13. At trial, the prosecution argued that this information was admissible pursuant to this Court’s decision in Moss v. State, 727 So.2d 720 (Miss.Ct.App.1998). The facts in Moss are distinctly different from the facts in the present case. In Moss, the prosecution presented evidence that the defendant abused his wife prior to killing her. Id. at 724-25(¶ 17). That evidence was admissible to demonstrate a continuing pattern of violence against the victim that ultimately culminated in the victim’s death. Id. at 725(¶ 19). See also Marbra v. State, 904 So.2d 1169, 1176(¶ 23) (Miss.Ct.App.2004). In the case presently before us, the challenged portion of the DVD at issue was that Robinson had previously been violent with Marilyn, rather than Bridgette. That evidence does not tend to demonstrate a continuing or escalating pattern of violence against Bridgette. Instead, it tends to persuade the jury that, because Robinson was violent with Marilyn on May 24, 2003, he was more likely to have been violent with Bridgette on November 30, 2005, and — by extension — he was more likely to have been guilty of the allegations against him. Accordingly, we find that the circuit court erred when it allowed the prosecution to submit that evidence to the jury. Be that as it may, the issue now becomes whether Robinson experienced prejudice as a result. Shearer, 423 So.2d at 826.
¶ 14. Viewed in light of Robinson’s own testimony during direct examination, we must conclude that the error is harmless. Robinson testified that Bridgette confronted him with a pistol, that he grabbed the pistol in self-defense, and that the pistol discharged accidentally during their struggle. According to Robinson, Bridgette stated that she had been shot. Robinson testified that Bridgette did not appear to be injured and that they talked for a brief moment. Robinson said he then told Bridgette that he was going to leave because he was on probation. Robinson’s own attorney then asked Robinson to elaborate on his prior convictions that led to his being on probation. Robinson responded and testified that he had prior domestic violence convictions for abusing Bridgette and Marilyn. Because Robinson testified as to his prior conviction for domestic violence against Marilyn, and used that prior conviction as his justification for leaving Bridgette’s house after Bridgette was shot, we find that Robinson did not experience any prejudice based on the revelation during the interrogation that he had a prior conviction for domestic assault against Marilyn. Accordingly, although we find that the circuit court erred, based on Robinson’s later testimony, we find that the error was rendered harmless.
¶ 15. The dissent argues that this logic is “syllogistically faulty circular reasoning.” With due respect for the dissent and its opinion of our logical reasoning, we disagree. Robinson was indicted for the premeditated murder of his girlfriend, Bridgette. Robinson’s defense was based *529 on the premise that the homicide was excusable due to accident and misfortune as set forth in Mississippi Code Annotated section 97-3-17 (Rev.2006). Stated differently, Robinson claimed the pistol accidentally discharged during a domestic quarrel with Bridgette and that Bridgette’s death occurred either while he was “doing a lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent” or while he was acting “in the heat of passion, upon any sudden and sufficient provocation.” Miss.Code Ann. § 97-3-17(a) and (b). To make such a claim of excusable homicide credible, Robinson had to convince the jury that his flight from the scene, with the weapon, was logical. Reasonable jurors could conclude that Robinson’s unexplained flight from the scene of Bridgette’s shooting, whom he professed to love, without calling for assistance is incongruent with a claim of accident. It is apparent Robinson interjected on his status as a prior convicted domestic-violence offender on probation, which logically prohibited him from possessing a weapon or being present at Bridgette’s home, as a strategic trial decision to attempt to explain his otherwise unexplainable flight. Mississippi Rule of Evidence 103(a) instructs that a trial court’s error in admitting otherwise inadmissible evidence or excluding otherwise admissible evidence is not reversible error unless a substantial right of a party is affected. Under the particular facts of this case, we fail to see how this error by the trial court was anything but harmless.
III.CONFRONTATION CLAUSE
¶ 16. Robinson’s next assignment of error also involves the police report that was read during Robinson’s interrogation. As previously mentioned, Marilyn gave a statement to Officer Williams, and Officer Williams’s report was read to Robinson during Robinson’s interrogation. Robinson claims the circuit court violated his right to confront witnesses against him when it allowed the prosecution to play the DVD recording of the interrogation. Robinson argues that, because he never had an opportunity to cross-examine Marilyn or Officer Williams, when the circuit court allowed that portion of the DVD to be played before the jury, the circuit court infringed upon his right to confront adverse witnesses. However, Robinson did not object to the DVD interrogation on the basis that he never had the opportunity to cross-examine Marilyn or Officer Williams. Accordingly, this issue is procedurally barred. Williams, 971 So.2d at 590(¶ 29).
IV. IMPEACHMENT WITH PRIOR CONVICTIONS
¶ 17. Robinson claims the prosecution improperly cross-examined him about his prior convictions. According to Robinson, the prosecution’s questions about his prior convictions for domestic assault were prohibited by Mississippi Rule of Evidence 609. Robinson admits that his attorney did not object to the questions that he now takes issue with on appeal. However, Robinson claims that the prosecution’s cross-examination amounts to plain error. We disagree. This Court will not rule on an issue that was not first presented to the trial court. Williams, 971 So.2d at 590(¶ 29). Due to a lack of a contemporaneous objection, this issue is procedurally barred.
V. SELF-DEFENSE INSTRUCTION
¶ 18. Robinson’s proposed jury instruction designated as instruction Dl(a) was a self-defense instruction. The circuit court declined to grant the instruction. According to Robinson, the circuit court committed reversible error in refusing the instruction.
*530 ¶ 19. The Mississippi Supreme Court has described the appropriate standard of review as follows:
When considering a challenge to a jury instruction on appeal, we do not review jury instructions in isolation; rather, we read them as a whole to determine if the jury was properly instructed. Similarly, this Court has stated that in determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found. In other words, if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results.
Smith v. State, 835 So.2d 927, 934(¶ 23) (Miss.2002) (internal citations and quotations omitted).
¶ 20. Robinson did not present any evidence that he shot Bridgette in self-defense. The evidence indicated that Bridgette aimed a pistol at Robinson, that Robinson grabbed the pistol in self-defense, and that the pistol then discharged accidentally. Consequently, Robinson was not entitled to a self-defense instruction for shooting Bridgette.
VI. DEFINITION OF REASONABLE DOUBT
¶21. In this issue, Robinson claims the circuit court allowed the prosecution to define reasonable doubt during the prosecution’s closing argument. Robinson’s theory stems from the following statement:
Let me tell you what this reasonable doubt-let my [sic] quantify that for you. If you go to bed at night and you wake up in the morning and there’s snow all over the ground, you can suppose a number of things. You can suppose a bunch of Eskimos got a big tractor and they came down here in a trailer, and they shoveled snow on your front yard or that the Army brought in a C-130 and dumped snow out as they flew over your house, but you don’t do that because it’s not reasonable. It’s ludicrous. And so you say it snowed last night. That’s what this reasonable doubt thing is all about, Ladies and Gentlemen. That’s what it’s about. You weren’t there to see the snow. You weren’t there to see this woman killed. But the question is was it shoveled out or was it dumped out or did it actually snow that night? That’s the question.
Robinson concedes that he must travel under a plain-error theory, because his attorney did not object to the statement at issue.
¶ 22. We decline to review this issue for plain error. Our supreme court has held that “[i]f no contemporaneous objection is made, the error, if any, is waived.” Slaughter v. State, 815 So.2d 1122, 1131(¶ 47) (Miss.2002). We are under no obligation to review an assignment of error when an objection was not made or when an objection was made untimely. Id.
VII. CUMULATIVE ERROR
¶ 23. In his final issue, Robinson claims the cumulative effect of the errors at trial requires that this Court reverse the judgment of conviction and sentence. Although we found harmless error in Issue II, we have found no other errors. It follows that there can be no cumulative effect of errors that do not exist. As such, we find no merit to this issue.
¶ 24. THE JUDGMENT OF THE OKTIBBEHA COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS *531 AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO OKTIB-BEHA COUNTY.
LEE AND MYERS, P JJ., GRIFFIS AND CARLTON, JJ., CONCUR. KING, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY IRVING, BARNES AND ISHEE, JJ. MAXWELL, J., NOT PARTICIPATING.